United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8            IN THE UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11

WIGFALL, et al                          No   C 06-4968 VRW
12
          Plaintiffs,                        ORDER
13
          v
14
CITY AND COUNTY OF SAN FRANCISCO,
15 et al,

16        Defendants.

17 _____/

18

19        Plaintiffs, who are former inmates of the San Francisco

20 county jail, claim that Sheriff's Deputy Neu sexually harassed and

assaulted them on several occasions between May 5, 2005, and
21
September 19, 2005.  Doc #8.  Plaintiffs further allege that the
22
City and County of San Francisco ("the City") and Sheriff Michael
23
Hennessey established various customs and practices that enabled
24
Deputy Neu to violate plaintiffs' constitutional and statutory
25
rights.  Id.
26
//
27
//
28

United States District Court
For the Northern District of California

        Defendants have moved pursuant to Rule 12(b)(6) to
dismiss (1) all state law claims asserted against the City and
Sheriff Hennessey and (2) state constitutional claims (i e, fifth,
sixth and seventh causes of action) asserted against Deputy Neu.
Doc #16.  For the following reasons, the court GRANTS defendants'
motion to dismiss.


                                I

        On a FRCP 12(b)(6) motion to dismiss, all well-pleaded
allegations of material fact are taken as true and construed in a
light most favorable to the non-moving party.  <u>General Conference</u>
<u>Corp of Seventh-Day Adventists v Seventh-Day Adventist</u>
<u>Congregational Church</u>, 887 F2d 228, 230 (9th Cir 1989).
Accordingly, the facts upon which the court rules are those drawn
from plaintiffs' complaint (Doc #8), taking its allegations as
true.

        This case arises out of the alleged sexual harassment and
assault of plaintiffs during their incarceration at the City's main
jail facility.  Doc #8, ¶ 1.  In particular, beginning on May 5,
2005, and continuing until September 2005, Deputy Neu allegedly
used his position of authority to coerce, harass, intimidate and
force plaintiffs into participating in sexual acts against their
will.  See id, ¶¶ 12-26.  Plaintiffs assert they informed other
deputy sheriffs about Deputy Neu's behavior, but that "considerable
time elapsed before any known measures were taken to prevent or
stop the complained of conduct from occurring."  Id, ¶ 1.
//
//

                                2

**United States District Court**

For the Northern District of California

II

Plaintiffs filed suit on August 16, 2006, advancing eighteen federal and state causes of action.  Doc #1.  On November 30, 2006, defendants filed the present motion to dismiss.

FRCP 12(b)(6) motions to dismiss essentially "test whether a cognizable claim has been pleaded in the complaint." Scheid v Fanny Farmer Candy Shops, Inc, 859 F2d 434, 436 (6th Cir 1988).  FRCP 8(a), which states that a plaintiff's pleadings must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," provides the standard for judging whether such a cognizable claim exists.  Lee v City of Los Angeles, 250 F3d 668, 679 (9th Cir 2001).  This standard is a liberal one that does not require a plaintiff to set forth all the factual details of the claim; rather, all that the standard requires is that a plaintiff give the defendant fair notice of the claim and the grounds for making that claim.  Leatherman v Tarrant County Narcotics Intell & Coord Unit, 507 US 163, 168 (1993) (citing Conley v Gibson, 355 US 41, 47 (1957)).  To this end, a plaintiff's complaint should set forth "either direct or inferential allegations with respect to all the material elements of the claim".  Wittstock v Van Sile, Inc, 330 F3d 899, 902 (6th Cir 2003).

Under Rule 12(b)(6), a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [its] claim which would entitle [it] to relief."  Hughes v Rowe, 449 US 5, 9 (1980) (citing Haines v Kerner, 404 US 519, 520 (1972)).  See also Conley, 355 US at 45-46.  All material allegations in the complaint

3

must be taken as true and construed in the light most favorable to plaintiff.  See In re Silicon Graphics Inc Sec Litig, 183 F3d 970, 980 n10 (9th Cir 1999).

When matters establishing the basis for a state-law immunity are present in the complaint, "[t]he [c]ourt can properly grant a motion to dismiss * * * based on an immunity defense under California law."  Jermon v County of Sonoma, 1997 WL 50266 at *8 (ND Cal) (Smith, J) (citing Fenton v Groveland Community Serv Dist, 185 Cal Rptr 758, 764 (Cal Ct App 1982)).


III

A

Defendants argue that the City and Sheriff Hennessey are immune from claims arising under state law and move to dismiss those claims pursuant to FRCP 12(b)(6).  Doc #16.  Defendants rely on two provisions in tandem, Cal Gov Code § 815(b) and § 844(6), which are said to immunize public entities from claims of injury asserted by prisoners.  Section 815(b) provides that the liability of a public entity "is subject to any immunity of the public entity provided by statute, including this part."  Cal Gov Code § 815(b).  Among the immunities referenced in § 815(b) is the one codified in Cal Gov Code § 844(6):

> (a) Notwithstanding any other provision of this part, except as provided in this section and in Sections 814, 814.2, 845.4 and 845.6, or in Title 2.1 (commencing with Section 3500) of Part 3 of the Penal Code, a public entity is not liable for:
>
> (1) * * *
> (2) An injury to any prisoner.

//

//

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

1    It is generally recognized that § 844(6) immunity

2  overrides any other statute imposing tort liability, including

3  those residing outside of the Tort Claims Act (§§ 810 et seq).  The

4  comments to § 815 state in pertinent part:

5           In the following portions of this division, there
           also are many sections granting public entities and
6           public employees broad immunities from liability.
           * * * [U]nder subdivision (b) of this section, the
7           immunity provisions will as a general rule prevail
           over all sections imposing liability.
8
9  Cal Gov Code § 815.  See also California Government Tort Liability

10  Practice § 2-15 at 83-84 (stating that statutory immunities extend

   to liabilities established by other statutes); 35 Cal Jur 3d,
11
   Government Tort Liability, § 3, at 15-16 (accord); Wright v State
12
   of California, 122 Cal App 4th 659, 672 (2004) ("[S]overeign
13
   immunity is the rule in California; governmental liability is
14
   limited to exceptions specifically set forth by statute." (quoting
15
16  Cochran v Herzog Engraving Co, 155 Cal App 3d 405, 409 (1984)).  In

17  short, as a general rule, statutory immunities prevail over

   statutes that impose tort liability.
18
19       Plaintiffs argue that § 844(6) immunity does not preclude

20  them from pursuing their claims under California Civil Code §§ 52

   and 51(7), which provide damage remedies for civil rights
21
   violations under California Law.  Doc #20 at 5-6.  In view of the
22
23  general rule set out above, the California Supreme Court imposes

   strict requirements for a statute to override a government
24
   immunity:  the legislature must "decree[] that the provisions of
25
26  the [statute] are to displace [the immunity]."  Schmidt v Superior

   Court, 48 Cal 3d 370, 383 (1989).
27
28  //

                                 5

1    Pursuant to this standard, the court in <u>Gates v Superior</u>

2    <u>Court</u>, 32 Cal App 4th 481 (1995), concluded that §§ 51(7) and 52 do

3    not override government immunities.  In <u>Gates</u>, plaintiffs brought

4    state claims against City of Los Angeles police officials,

5    including claims under §§ 52 and 51(7), for failure to provide

6    police protection during a riot.  Id.  The court summarized its

7    analysis concerning immunity as follows:

8         [W]e have read 117 legislative committee and caucus
          reports prepared since 1963 relating to Civil Code
9         sections 51.7 and 52. Nothing in those 117 reports
          suggests that any damage immunity in the Tort
10        Claims Act is inapplicable to [claims under
          sections 51.7 and 52].

11

12   Guided by this legislative history, the court in <u>Gates</u> concluded

13   that the City of Los Angeles was immune from plaintiffs' claims

14   under §§ 51(7) and 52.  See also <u>Moore v Baca</u>, 2002 WL 31870541 (C

15   D Cal 2002) (adopting <u>Gates</u> and extending its scope to immunity

16   under § 844(6)).

17        Plaintiffs do not provide legislative history to support

18   their contention that §§ 51(7) and 52 override immunity under §

19   844(6).  Nor do plaintiffs cite a single case that adopts their

20   theory.  Instead, plaintiffs argue that <u>Gates</u> is inapplicable

21   because the injury was caused by third-party rioters, whereas

22   plaintiffs in the present case are suing for damages "proximately

23   arising out of the acts or omissions of its employees."  Doc #20 at

24   6.  As defendants note, this is a distinction without a difference;

25   the third-party status of the primary tortfeasor has no bearing on

26   the court's analysis of the legislative history of §§ 51(7) and 52.

27   Accordingly, the court follows <u>Gates</u> and finds that §§ 51(7) and 52

28   are subject to the government's immunity under § 844(6).

United States District Court

For the Northern District of California

1    Additionally, the court concludes that the immunity

2    provision precludes plaintiffs' common law claims as well.   In

3    their opposition, plaintiffs fail to respond to defendants'

4    assertion that the City and Sheriff Hennessey are immune from these

5    claims.   The court suspects this omission stemmed from an absence

6    of legal support, as the court has not found a case in which a

7    common law tort trumped a public entity's statutory immunity.

8    Accordingly, the court finds that the City and Sheriff Hennessey

9    are immune from plaintiffs' state law claims.

10

11                                    B

12    Next, the court addresses defendants' contention that the

13    state constitutional provisions alleged in plaintiffs' complaint do

14    not provide a private cause of action for damages.   Plaintiffs seek

15    tort damages under three clauses of the state constitution:

16    article 1, § 13 (unreasonable seizure clause) and article I, § 7(a)

17    (due process and equal protection clauses).

18    The California Supreme Court has held that state

19    constitutional provisions do not necessarily support a claim for

20    monetary damages.   See Katzberg v Regents of Univ of Cal, 29 Cal

21    4th 300 (2002).   Indeed, "only two [California] decisions, each

22    filed two decades ago, have recognized an action for damages to

23    remedy a violation of the state Constitution * * * [and] [a]ll

24    subsequent decisions addressing the issue have declined to find

25    such an action for damages."   Katzberg, 29 Cal 4th at 311.   As

26    relevant here, state courts have expressly rejected state

27    constitutional damage claims for violation of the due process and

28    equal protection clauses (plaintiffs' sixth and seventh causes of

United States District Court

For the Northern District of California

action).  See Katzberg, 29 Cal 4th at 329 (no private right of
action for damages for violation of the due process clause of the
California Constitutoin); Javor v Taggart, 98 Cal App 4th 795, 807
(2002) ("It is beyond question that a plaintiff is not entitled to
damages for a violation of the due process clause or the equal
protection clause of the state Constitution.").  See also Degrassi
v Cook, 29 Cal 4th 333, 335 (2002) (no private right of action for
damages for violation of free speech clause of California
Constitution).

     With respect to plaintiffs' third state constitutional
claim (unreasonable seizure clause of article I, § 13), the legal
terrain is less developed.  One court concluded that this provision
does not provide an action for damages, but did so without
articulating its full reasoning.  See Rendon v Fresno Police
Department, 2006 WL 2694678 (E D Cal 2006).  Plaintiffs
nevertheless urge this court to blaze a trail and recognize damage
claims under article I, § 13, reasoning that the provision "on its
face, does not expressly forbid the awarding of money damages."
Doc #20 at 6.  But a damage remedy does not follow simply because
the drafter neglects to disclaim such a remedy; otherwise the
entire California Constitution would be actionable for monetary
relief.

     Instead, the court hews to the procedure for determining
the availability of damages recently adopted by the California
Supreme Court.  In Katzberg v Regents of the Univ of Cal, 29 Cal
4th 300 (2002), the Court established that the overarching aim is
to determine whether "the enactors intended that [the
constitutional provision] include a damages remedy for its

8

United States District Court

For the Northern District of California

1  violation."  Katzberg, 29 Cal 4th at 317.  To do so, courts first

2  look for evidence of "an affirmative intent either to authorize or

3  to withhold a damages action to remedy a violation."  Id at 317.

4  The court's inquiry under the first step involves "the language and

5  history of the constitutional provision at issue, including whether

6  it contains guidelines, mechanisms, or procedures implying a

7  monetary remedy, as well as any pertinent common law history."  Id.

8       Second, if the inquiry into intent is not dispositive,

9  the court must "undertake the 'constitutional tort' analysis

10  adopted by Bivens and its progeny."  Id.  This analysis turns on

11  "whether an adequate remedy exists, the extent to which a

12  constitutional tort action would change established tort law, and

13  the nature and significance of the constitutional provision," as

14  well as considering "the existence of any special factors

15  counseling hesitation in recognizing a damages action, including

16  deference to legislative judgment, avoidance of adverse policy

17  consequences, considerations of government fiscal policy, practical

18  issues of proof, and the competence of courts to assess particular

19  types of damages."  Id.

20       Pursuant to the Katzberg analysis, the court first

21  examines the plain language of the statute to determine whether the

22  text contemplates recovery of damages for the provision's

23  violation.  Article I, § 13 states in full:

24       The right of the people to be secure in their
         persons, houses, papers and effects against
25       unreasonable searches and seizures may not be
         violated; and a warrant may not issue except on
26       probable cause, supported by oath or affirmation,
         particularly describing the place to be searched
27       and the persons and things to be seized.

   //

28

9

United States District Court

For the Northern District of California

As is apparent from the language, article I, § 13 does not contain any specific authority for the recovery damages.

The Katzberg court also observed that, notwithstanding the absence of explicit language, the intent to permit recovery of damages may be inferred from language within the provision that provides guidelines, mechanisms or other procedures that imply a monetary remedy. Katzberg, 29 Cal 4th at 317. But article I, § 13 only contains general principles of law; it provides no mechanism or guidelines and the only procedure contemplated (a particularized warrant) does not imply a monetary remedy for the violation. Accordingly, nothing in the text of article I, § 13 impels the court to infer an intent to authorize a damages action to remedy the provision's violation.

The Katzberg analysis is not, however, confined to the plain language of the constitutional provision. Katzberg also endorses the examination of the legislative history of the provision and, in the case of amendments added by referendum, ballot pamphlets. Katzberg, 29 Cal 4th at 349. The historical notes to article I, § 13 state that its predecessor was adopted May 7, 1879, and was subsequently amended on November 6, 1934, and June 6, 1972. See West's Annotated California Codes, Constitution, article I, § 13.

For legislative history, defendants rely on Proposition 7, a measure included on the November 4, 1974, ballot. See Doc #22. Proposition 7 contained various recommendations of the California Constitution Revision Commission, including the renumbering of article 1, § 13 and the addition of article 1, § 7(a) (the due process and equal protection clauses). Id at 26-27,

10

United States District Court

For the Northern District of California

71-72.  The court in <u>Katzberg</u> examined these materials and found
nothing in them to suggest that the voters affirmatively intended
to create a damages remedy with respect to the due process and
equal protection clauses of article I, section 7.  Proposition 7 is
relevant to California's due process and equal protection clauses
because the measure substantively amended those clauses; that logic
does not, however, extend to article 1, § 13, which Proposition 7
merely renumbered.  Hence, defendants' reliance on these materials
is misplaced.

     Due to the absence of dispositive evidence concerning
intent, the court proceeds along the <u>Katzberg</u> analysis and assesses
whether non-constitutional remedies are adequate to rectify the
alleged wrong.  See <u>Katzberg</u>, 29 Cal 4th at 325.  In the present
case, the sheer number of claims arising from the alleged assault
and sexual harassment (eighteen) suggests that plaintiffs have an
adequate remedy at law.  The alleged conduct triggers a panoply of
criminal and civil actions under California law, many of which
permit plaintiffs to recover money damages.  Indeed, among Deputy
Neu's many alleged violations of law, the "unreasonable seizure" of
plaintiffs seems the least applicable.

     Additionally, plaintiffs retain a number of remedies
under federal law.  Although the court in <u>Katzberg</u> declined to
consider whether federal tort law could satisfy the "adequate
remedy" element of its analysis, other California courts have found
relevant the existence of federal causes of action.  See e g,
<u>Carlsbad Aquafarm, Inc v State Department of Health Services</u>, 83
Cal App 4th 809 (2000).  In <u>Carlsbad Aquafarm</u>, for instance, the
court noted that the plaintiff had an equally effective monetary

United States District Court

For the Northern District of California

1    remedy under 42 USC § 1983, id at 822, which is a statute

2    plaintiffs rely on in the present action.  In view of these state

3    and federal causes of action, the court finds that plaintiffs have

4    an adequate remedy independent of article I, § 13 of the California

5    Constitution.

6              Plaintiffs' sole argument pertaining to the <u>Katzberg</u>

7    analysis is to proclaim that "[t]he protection provided for by Cal

8    Const Art 1 § 13 is a cornerstone of our country's democracy."  Doc

9    #20 at 7.  The court doubts whether democracy is better served by

10   disregarding voter intent and creating a cause of action by

11   judicial fiat.  But in any event, the California Supreme Court

12   disregarded this very argument:  "the relative importance of the

13   constitutional right is of little help in determining the

14   availability of a damages remedy for a violation of that right."

15   <u>Katzberg</u>, 29 Cal 4th at 328 (quoting <u>Carlsbad Aquafarm, Inc v State</u>

16   <u>Dept of Health Services</u>, 83 Cal App 4th 809, 823 (2000)).

17   Accordingly, the court finds that the <u>Katzberg</u> analysis militates

18   against fashioning a new tort remedy under article I, § 13.

19             As a fallback position, plaintiffs urge the court not to

20   dismiss their constitutional claims because they seek injunctive

21   relief in addition to monetary damages.  In response, defendants

22   contend that plaintiffs lack standing to seek injunctive relief

23   because plaintiffs are no longer incarcerated.

24             To establish an entitlement to injunctive relief,

25   plaintiffs must demonstrate there is a substantial likelihood that

26   they will suffer an injury in the future.  <u>City of Los Angeles v</u>

27   <u>Lyons</u>, 461 US 95, 102 (1983).  This requirement is not satisfied by

28   general assertions that plaintiffs may be incarcerated in the

United States District Court

For the Northern District of California

future. <u>O'Shea v Littleton</u>, 414 US 488, 497 (1974) ("We are * * * unable to conclude that the case-or-controversy requirement is satisfied by general assertions or inferences that in the course of their activities respondents will be prosecuted for violating valid criminal laws. We assume that respondents will conduct their activities within the law and so avoid prosecution and conviction."). See also <u>Spencer v Kemna</u>, 523 US 1, 15 (1998) (rejecting standing because it was "contingent upon respondents' violating the law, getting caught, and being convicted").

Under <u>O'Shea</u> and its progeny, this court rejects plaintiffs' resignation that they will return to San Francisco county jail. Plaintiffs thus lack standing to seek injunctive relief pursuant to their state constitutional claims. Accordingly, the court grants defendants' motion to dismiss plaintiffs' state constitutional claims.


                              IV

In sum, the court GRANTS defendants' motion to dismiss plaintiffs' state claims against the City and Sheriff Hennessey. The court also GRANTS defendants' motion to dismiss plaintiffs' state constitutional claims (i e, claims 5, 6 and 7).


IT IS SO ORDERED.

_____

VAUGHN R WALKER

United States District Chief Judge