1

2

3

4

5

6

7          IN THE UNITED STATES DISTRICT COURT

8        FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

DAVID SPEARS and SABRINA WIGFALL,      No   C 06-4968 VRW

10          Plaintiffs,                      ORDER

11

12          v

13

CITY AND COUNTY OF SAN FRANCISCO,
14 SHERIFF MICHAEL HENNESSEY,
DEPUTY NEU
15 and DOES 1-100,

16          Defendants.
_____/
17

18          Plaintiffs, who are former inmates of the San Francisco

19 County jail, claim that Sheriff's Deputy Neu sexually harassed and

20 assaulted them on several occasions between May 5, 2005, and

21 September 19, 2005.  Doc #30.  Plaintiffs further claim that the

22 City and County of San Francisco ("the City") and Sheriff Michael

23 Hennessey established a custom or practice of sexual assault by

24 failing to discipline Deputy Neu for his violations of plaintiffs'

25 constitutional and statutory rights.

26          On January 22, 2007, the court dismissed all state law

27 claims asserted against the City and Sheriff Hennessey and several

28 state constitutional claims asserted against Deputy Neu.  Doc #25.

**United States District Court**
For the Northern District of California

Defendants now take more cuts at plaintiffs' claims.
Defendants move first to dismiss each plaintiff's federal claims
under section 1983 for failure to exhaust prison remedies.  Doc
##40, 42.  Defendants move for partial summary judgment on each
plaintiff's section 1983 claims against the City for failure to
prove a custom or policy.  Doc #44.  As to the remaining state law
claims against Deputy Neu, Neu moves for partial summary judgment
on all of David Spears's claims as time-barred.  Doc #44.  Deputy
Neu moves also for partial summary judgment on plaintiffs' state
law claims against under the Unruh Act and Bane Act.  Doc #44.

I

This case arises out of the alleged sexual harassment and
assault of plaintiffs during their incarceration at the City's main
jail facility.  Beginning on May 5, 2005, and continuing until
September 2005, Deputy Neu allegedly used his position of authority
to coerce, harass, intimidate and force plaintiffs into
participating in sexual acts with him against their will.  Doc #30.

The details of the sexual assaults are not spelled out in
the summary judgment record.  The deposition transcripts attached
to the memoranda before the court concern the aftermath of the
assaults and not the assaults themselves.  Although defendants'
answer to the complaint denied each and every allegation (see Doc
#32), defendants' current motions, for purposes of argument, do not
dispute the factual basis of plaintiffs' claims.  Doc #44 at 7.  It
is unnecessary, therefore, to recite in detail the allegations of
plaintiffs' assault and harassment claims.  Instead defendants
argue that plaintiffs' claims fail as a matter of law.  Accordingly

the court will presume for the limited purpose of the current
motions that these allegations of assault and harassment as claimed
by plaintiffs are true.

A

On July 21, 2005, David Spears submitted a claim form to
the City.  Doc #54-4.  The claim form, signed under penalty of
perjury, was for damages arising out of his sexual assault at the
hands of Deputy Neu.  Spears reported Deputy Neu's alleged conduct
to a Deputy Sanchez.  Doc #54-4 at 5.  On June 12, 2005, Deputy Neu
allegedly confronted Spears, demanding to know what he had told
Deputy Sanchez and promising food if Spears did not mention the
incident to anyone else.  Doc #54-4 at 5-6.  Later, Spears
disclosed the sexual assault to a Deputy Miller as well.  Doc #54-4
at 6.

At some point, Internal Affairs conducted two formal
interviews with Spears to investigate.  Doc #45-3 at 4-6.  The
record is silent whether Neu was ever disciplined for his
misconduct.  At least three months after the assault, Spears was
transferred to San Quentin State Prison.  Doc #41-2 at 4.  He was
released in December 2006 but was arrested later that month and
sent to California Men's Colony in San Luis Obispo, where he
resides currently.  Doc #41-2 at 5; Doc #41 at ¶3.  While in
custody at the county jail, Spears did not file a formal written
grievance under the jail's procedures.  Doc #41 at ¶¶4-5.

Instead of filing a formal written grievance, Spears
filed the civil claim with the City.  Spears's claim form was
mailed to the City Controller's office on July 21, 2005.  See Doc

3

United States District Court
For the Northern District of California

#54-4 at 2.  The claim was filed on July 29, 2005, and investigated by Naomi Willis of the Office of the City Attorney.  Doc #45-5. The claim was denied on August 15, 2005.  Doc #45-5.  The notice of denial stated that Spears would have six months to file a court action on his claims.  Doc #45-5.  Spears joined this lawsuit as a party by the filing of an amended complaint on November 7, 2006. Doc #8.  At the time, Spears was incarcerated at San Quentin.  Doc #41-2 at 4.

B

The details of Deputy Neu's alleged assault of Sabrina Wigfall are also unnecessary to recite in detail.  Wigfall initiated this litigation on August 16, 2006.  Doc #1.  Wigfall was the only plaintiff in that pleading.  Spears and Wigfall did not join their claims until the filing of the previously mentioned amended complaint on November 7, 2006.  Doc #8.  That pleading alleged numerous federal and state causes of action.  Doc #8.  On January 22, 2007, the court dismissed all state law claims asserted against the City and Sheriff Hennessey, as well as certain state constitutional claims asserted against Deputy Neu.  Doc #25. Plaintiffs then amended their complaint twice more, adding a new state constitutional claim.  Doc ##26, 30.

II

Defendants seek dismissal of plaintiffs' claims for failure to exhaust remedies under the Prison Litigation Reform Act (PLRA), 42 USC § 1997e (2000).  The PLRA requires that prisoners exhaust administrative remedies before filing suit in federal

4

court.  42 USC § 1997e(a).  The relevant portion of the PLRA
provides:

> No action shall be brought with respect to prison
> conditions under section 1983 of this title, or any other
> Federal law, by a prisoner confined in any jail, prison,
> or other correctional facility until such administrative
> remedies as are available are exhausted.

42 USC § 1997e(a).  A prisoner's failure to exhaust is an
affirmative defense, which defendants have the burden of raising
and proving.  Jones v Bock, 127 SCt 910, 921 (2007); see Brown v
Valoff, 422 F3d 926 (9th Cir 2004);  Wyatt v Terhune, 315 F3d 1108,
1119 (9th Cir 2003).  Failure to exhaust should be treated as a
matter in abatement, which means the issue is subject to an
unenumerated Rule 12(b) motion rather than a motion for summary
judgment.  Wyatt, 315 F3d at 1119.  If the court concludes that the
prisoner has not exhausted the appropriate administrative remedies,
the proper remedy is dismissal without prejudice.  Wyatt, 315 F3d
at 1120.  Defendants here move to dismiss for failure to exhaust as
to both plaintiffs.  The outcome of the motion turns on a
relatively straightforward point not, unfortunately, made clear in
the parties' submissions.

When her initial complaint was filed (Doc #1), Wigfall
was no longer incarcerated at the City jail.  When Spears joined
the litigation with the filing of the first amended complaint (Doc
#8), he too was no longer at the City jail, having been released
from custody.  He was, however, a prisoner elsewhere, namely San
Quentin State Prison.  An initial question thus arises whether the
exhaustion requirement of the PLRA applies to plaintiffs.  Section
1997(h) defines "prisoner" and does so in the present tense which

5

United States District Court

For the Northern District of California

1  might at one level suggest that plaintiffs are somehow excused from

2  the exhaustion requirement: no longer prisoners of the institution

3  at which the asserted claim arose, there are no remedies to

4  exhaust.  Were but it that simple.

5       The PLRA defines "prisoner" as "any person incarcerated

6  or detained in any facility who is accused of, convicted of,

7  sentenced for, or adjudicated delinquent for, violations of

8  criminal law or the terms and conditions of parole, probation,

9  pretrial release, or diversionary program."  42 USC § 1997e(h).

10 Under the ordinary meaning of those terms, a former prisoner is not

11 "a person incarcerated or detained," and the exhaustion requirement

12 of the PLRA should not apply to non-prisoners.

13      There is no clear Ninth Circuit precedent whether the

14 PLRA exhaustion requirement applies to former prisoners who file

15 federal claims after they are released from incarceration.  The

16 Ninth Circuit has not answered the question directly but confronted

17 a similar question in Page v Torrey, 201 F3d 1136 (9th Cir 1999).

18 There, plaintiff was civilly committed pursuant to the California

19 Sexually Violent Predator Act and sought to bring a section 1983

20 action in federal court.  In interpreting the PLRA exhaustion

21 language, the court held that "only individuals who, at the time

22 they seek to file their civil actions, are detained as a result of

23 being accused of, convicted of, or sentenced for criminal offenses

24 are 'prisoners' within the definition of 42 USC § 1997e * * *."

25 Page, 201 F3d at 1140.  The court found that the PLRA exhaustion

26 requirement did not apply because the plaintiff was not in criminal

27 custody at the time of filing.  Page, 201 F3d at 1140.

28

**United States District Court**
For the Northern District of California

District courts within the Ninth Circuit that have considered the applicability of the PLRA exhaustion requirement to former prisoners have reached inconsistent holdings. In Kritenbrink v Crawford, 313 F Supp 2d 1043 (D Nev 2004), the court relied on the plain language of the statute as well as the reasoning of Page v Torrey to conclude that the exhaustion requirement of the PLRA does not apply to former prisoners. Kritenbrink, 313 F Supp 2d at 1048. See also Thomas v Baca, 2005 WL 697986 at *3 (C D Cal 2005) ("The exhaustion requirement applies to those actions brought by 'a prisoner confined in any jail, prison, or other correctional facility.' Had Congress intended to preclude suits brought by former inmates, it could have written the exhaustion provision to do so. It did not."); Zaragoza v Maricopa County, 2006 WL 581219 at *2 (D Ariz 2006) ("[I]n looking to the authority from this Circuit as well as others, it is clear that the majority position is that the PLRA's exhaustion requirement only applies to prisoners, not released former prisoners.").

On the other hand, in Morgan v Maricopa County, 259 F Supp 2d 985 (D Ariz 2003), the court distinguished Page, concluding that Page announced a civil confinement versus criminal incarceration rule and not a current inmate versus former prisoner rule. See Morgan, 259 F Supp 2d at 991-92. The court concluded that the PLRA exhaustion requirement applies to former prisoners who file post-imprisonment claims for violations suffered while they were incarcerated. See Morgan, 259 F Supp 2d at 992. Similarly, Judge Illston in Mason v County of San Mateo, 2005 WL 3957924 (N D Cal 2005) found Page not controlling and held that the

**7**

**United States District Court**
For the Northern District of California

PLRA exhaustion requirement applied to plaintiff even though he was no longer incarcerated.  See Mason, 2005 WL 3957924 at *3.

Both Morgan and Mason relied on two Supreme Court decisions, Booth v Churner, 532 US 731 (2001), and Porter v Nussle, 534 US 516 (2002), which were decided after Page v Torrey.  Both of those Supreme Court decisions articulate the broad scope of the PLRA exhaustion requirement, but neither decision considers whether the PLRA exhaustion requirement applies to former prisoners.  Booth held that under the PLRA, an inmate seeking only money damages must complete any prison administrative process capable of providing at least some form of relief, even if the prison's grievance process does not permit monetary relief.  Booth, 532 US at 741.  Porter held that the PLRA exhaustion requirement applies to all suits about prison life, whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.  Porter, 534 US at 520.  These Supreme Court decisions make clear that the PLRA exhaustion requirement is broad with respect to the kinds of wrongs alleged by prisoners and the scope of relief sought.  They do not, however, instruct lower courts to dismiss unexhausted claims brought by former prisoners.

Every court of appeals to consider the issue has held that the PLRA exhaustion requirement does not apply to former prisoners.  See Norton v The City of Marietta, OK, 432 F3d 1145, 1150 (10th Cir 2005) (holding that because the plaintiff was not incarcerated at the time he brought an action under section 1983, the PLRA exhaustion requirement did not apply); Nerness v Johnson, 401 F3d 874, 876 (8th Cir 2005) (per curiam) (holding that the plaintiff was not subject to the PLRA exhaustion requirement

United States District Court

For the Northern District of California

because he was not a prisoner or otherwise incarcerated when he filed his complaint); <u>Kerr v Puckett</u>, 138 F3d 321, 323 (7th Cir 1998) (holding that section 1997e(e) does not extend to former prisoners); <u>Michau v Charleston County, SC</u>, 434 F3d 725 (4th Cir 2006) (holding that a former convict currently in civil confinement is not a "prisoner" within the meaning of the PLRA); <u>Ahmed v Dragovich</u>, 297 F3d 201, 210 (3d Cir 2002) (holding that a prisoner who has been released is not precluded by the PLRA from filing a section 1983 suit for incidents concerning prison conditions which occurred prior to his release); <u>Greig v Goord</u>, 169 F3d 165, 167 (2d Cir 1999) (per curiam) (holding that litigants who file actions after their release from prison are no longer "prisoners" for purposes of section 1997e(a)).  These courts have all concluded that it is the plaintiff's status at the time he files suit that determines whether the exhaustion requirement of the PLRA applies.

It is not necessary in this case, however, to decide whether the PLRA exhaustion requirement applies to prisoners after their release or transfer to a different jurisdiction because there is a more fundamental difficulty with defendants' argument.  The exhaustion requirement is an affirmative defense rather than a pleading requirement.  <u>Jones v Bock</u>, 127 SCt 910, 921 (2007). Hence, defendants have the burden of showing non-exhaustion.  See <u>Brown v Valoff</u>, 422 F3d 926 (9th Cir 2004).  In the instant case, defendants have not met their burden of demonstrating that any prison administrative remedies remain available to plaintiffs.

The Ninth Circuit has held that to dismiss for failure to exhaust under the PLRA, defendants must demonstrate non-exhaustion and show which remedies remain available to the plaintiff.  In

United States District Court

For the Northern District of California

**Brown**, the Ninth Circuit concluded that "there can be no 'absence of exhaustion' unless *some* relief remains 'available'[;] a defendant must demonstrate that pertinent relief remained available * * *." **Brown**, 422 F3d at 936-37.  See also **Sheets v Terhune** 421 F Supp 2d 1304, 1306 (E D Cal 2006) ("Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated.").  Mere speculation on hypothetical available remedies is insufficient:

> In lieu of evidence, [defendant] now proffers that, "[o]ne can easily <u>imagine</u> actions that [the Department] could have taken to provide relief to Brown.  For example, the [Department] could have transferred [the offending officer] to a different post, transferred Brown to a different cell or prison, or modified its policies and procedures concerning the use of [force].  At a minimum, [defendants] could have afforded Brown another opportunity to be heard." (Emphasis added.)  Establishing, as an affirmative defense, the existence of further "available" administrative remedies requires evidence, not imagination.

**Brown**, 422 F3d at 939-40.

The Ninth Circuit's reasoning is consistent with Supreme Court precedent.  In **Booth**, the Court noted that "[w]ithout the possibility of some relief, the administrative officers would presumably have no authority to act on the subject of the complaint, leaving the inmate with nothing to exhaust." **Booth**, 532 US at 735 n4.  The only exception to that standard is if a prisoner fails to follow the prison's grievance procedures and then uses his own default to argue that remedies are unavailable.  See **Woodford v Ngo**, 126 SCt 2378, 2387, 2393 (2006) (applying a "proper

10

exhaustion" standard and holding that a prisoner failed to exhaust because he filed a prison grievance after the prison's fifteen-day statute of limitations had run); <u>Bock</u>, 127 SCt at 922.  Defendants must offer evidence that either some relief is still available to the prisoner or that the prisoner's attempt to exhaust remedies was improper due to a procedural default.

Defendants woefully fail to meet that burden.  See <u>Brown</u>, 422 F3d at 937; <u>Wyatt</u>, 315 F3d at 1119.  For instance, at the hearing on defendants' motion, the court asked defendants' counsel how Wigfall could pursue a mandatory informal grievance, and counsel responded, "I don't know, Your Honor.  And it may not be possible."  Defendants have provided no evidence of any relief plaintiffs may be able to obtain or that plaintiffs had available but failed to pursue.

By the same token, plaintiffs concede that they failed to submit a written grievance in accordance with the City jail's grievance procedure.  Spears attempts to excuse that failure by arguing that he "resolve[d]" his grievance against Deputy Neu "by informally speaking with Sheriff Deputy Miller" which resulted in no "additional contact with Defendant Neu which is what he desired."  Doc #49 at 6.  Accordingly, Spears states he had no further need "to exhaust further levels of review."  Doc #49 at 6.  Similarly, Wigfall asserts that she "essentially was able to obtain an acceptable administrative remedy through informal personal contacts."  Doc #48 at 11.

Hence, although an exhaustion defense might be available to the City, to raise it the City must show that "some administrative action can be ordered," <u>Brown v Valoff</u>, 422 F3d 926,

United States District Court

For the Northern District of California

945 (9th Cir 2004) (Reinhardt concurring), so that some remedy is
or was available, even if perhaps it is not the remedy plaintiffs
now seek.  It is this that matters, the availability of a remedy,
not whether the grievant is in the City's custody, free or under
lock and key elsewhere.  Because the City has failed to make the
required showing, its motion fails.

The City's motion to dismiss for failure to exhaust is
therefore DENIED without prejudice.


II

Defendants also move for partial summary judgment on the
section 1983 claims against the City.  Presumably the grounds that
support entry of judgment for the City apply also to Sheriff
Hennessey.  Defendants contend that even if the deputies violated
plaintiffs' constitutional rights, no policy or practice of San
Francisco caused the violation.  Accordingly, as a matter of law,
neither San Francisco nor final policymaker Sheriff Hennessy can be
liable.


A

Under Monell v Department of Social Services, municipal
liability must be based on enforcement of a municipal policy or
custom that caused the deprivation of the plaintiffs' federal right
and not upon the municipality's mere employment of a constitutional
tortfeasor.  436 US 658 (1978).  "The 'official policy' requirement
* * * intend[s] to distinguish acts of the municipality from acts
of employees in order to limit municipal liability to conduct for
which the municipality is actually responsible."  Pembaur v

United States District Court

For the Northern District of California

<u>Cincinnati</u>, 475 US 469, 478 n6 (1986).  Section 1983 liability may be imposed when (1) the enforcement of a municipal policy or custom was (2) "the moving force" of the violation of federally protected rights.  See <u>Plumeau v School Dist #40 County of Yamhill</u>, 130 F3d 432, 438 (9th Cir 1997).

Municipal liability under section 1983 may be premised upon an officially promulgated policy, a single decision by an official with final decisionmaking authority, a custom or practice or deliberately indifferent training or supervision.  See <u>Christie v Iopa</u>, 176 F3d 1231 (9th Cir 1999).  Plaintiffs point to no decision by an official with final decisionmaking authority, nor do they cite an official custom or practice of the City or Sheriff Hennessey or to any deficiency in training of City jail personnel.  Plaintiffs argue that their evidence "is indicative of a systemic problem within the CCSF Sheriff's Department."  Doc #54 at 4-5.  Giving this a most charitable interpretation, plaintiffs appear to contend that the City and Sheriff Hennessey committed a constitutional failure to discipline jail personnel and, in particular, Deputy Neu.  As support for this, plaintiffs put in their own deposition testimony, their complaint and Spears's government tort act claim.  See Doc #54-2.

Random acts or isolated incidents of unconstitutional action by a non-policymaking employee are insufficient to establish the existence of a municipal policy or custom.  <u>See McDade v West</u>, 223 F3d 1135, 1142 (9th Cir 2000); <u>Trevino v Gates</u>, 99 F3d 911, 918 (9th Cir 1996); <u>Thompson v City of Los Angeles</u>, 885 F2d 1439, 1444 (9th Cir 1989).  "When one must resort to inference, conjecture and speculation to explain events, the challenged practice is not of

United States District Court

For the Northern District of California

sufficient duration, frequency and consistency to constitute an actionable policy or custom." Trevino, 99 F3d at 920.

A plaintiff may prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded. See Gillette v Delmore, 979 F2d 1342, 1348 (9th Cir 1992); Nadell v Las Vegas Metro Police Dept, 268 F3d 924, 930 (9th Cir 2001) (finding no municipal liability because there was no evidence at trial establishing that the use of excessive force was a formal policy, that there was a widespread practice of the police department or that previous constitutional violations had occurred for which there was no reprimand or discharge); Gomez v Vernon, 255 F3d 1118, 1127 (9th Cir 2001) (holding that correctional department administrators may not take a "blind-eye" approach and that condoning unconstitutional acts by the failure to investigate or correct the repeated violations constitutes a policy or custom under Monell). The Ninth Circuit stated in Henry v County of Shasta, 132 F3d 512, 519 (9th Cir 1997), that when a municipality "turn[s] a blind eye to severe violations of inmates' constitutional rights — despite having received notice of such violations — a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference."

**B**

Plaintiffs claim that Deputy Neu sexually assaulted two different inmates - Spears and Wigfall - and was not disciplined

**United States District Court**
For the Northern District of California

for his behavior.  The record includes no evidence of either discipline or lack of discipline or the reasons therefor.

Lack of discipline takes on significance only if, in fact, Neu's alleged misconduct was drawn to the attention of an official with decisionmaking authority.  Defendants do not argue in their memoranda that a final policymaker was unaware of the allegations.  The City's Internal Affairs Investigation Unit conducted an investigation into both plaintiffs' complaints against Deputy Neu, and the only reasonable inference is that the Sheriff was apprised of the results of that investigation and was therefore aware of the allegations.  See Henry, 132 F3d at 519 n12, citing Jones v City of Chicago, 787 F2d 200, 207 (7th Cir 1986); see especially Henry, 132 F3d at 525 (Rymer dissenting) ("[In Jones v City of Chicago], the City obviously knew about the prior complaint [because] it had investigated it * * *.").

Although plaintiffs do not spell this out, there is a suggestion that Neu's colleagues, instead of reporting Neu's misconduct to their superiors, encouraged Wigfall to continue her interactions with Deputy Neu and aided the sexual assault by pressuring Wigfall to stay silent.  In addition, plaintiffs' counsel claims that a "second guard" also "sexually assaulted a different inmate at or about the time period Plaintiffs were sexually harassed or assaulted (Pointer Declaration)."  Doc #54 at 5.  But plaintiffs offer no evidence, as opposed to an unsupported assertion, about this "second guard."

Plaintiffs contend that defendants should be held liable for Deputy Neu's alleged sexual assaults because the City ratified his conduct by failing to reprimand him.  Plaintiffs allege Neu

**United States District Court**

For the Northern District of California

committed one-on-one assaults on each of them.  Allegations of misconduct of that nature concern – virtually by definition – unofficial conduct, and certainly so when committed by a low-level jail staffer.  Even crediting plaintiffs' account of the two incidents involved (and it is appropriate to do so as such misconduct no doubt does occur and is furtive and frequently undetected), plaintiffs still are obligated to come up with evidence to proceed against the City and the Sheriff.

Post-event conduct by officials, such as a cover-up or a failure to discipline, can support <u>Monell</u> liability.  As is relevant to plaintiffs' claims, a "[p]olicy or custom may be inferred if * * * officials took no steps to reprimand or discharge the [officers involved], or if they otherwise failed to admit the [officers'] conduct was in error."  <u>Henry</u>, 132 F3d at 519.  But here for a failure to discipline Neu to have <u>Monell</u> import presupposes the truth of plaintiffs' allegations of Neu's misconduct which the City denies.  Or more precisely, a failure to discipline an accused officer is relevant only if a final policymaker had <u>reason to believe</u> that the accused officer had <u>actually committed</u> the alleged offenses.  Defendants need not discipline every employee who is merely accused of wrongdoing.

For that reason, the results of the Internal Affairs investigation are crucial to defendants' motion for summary judgment.  If, for example, Internal Affairs had concluded that the allegations were baseless and that Deputy Neu was a model employee who was the target of frivolous accusations by discontented inmates, then defendants could hardly be blamed for failing to discipline Neu.  By contrast, if Internal Affairs had concluded

United States District Court
For the Northern District of California

that the accusations had merit and that Deputy Neu was a dangerous sexual predator, then defendants' failure to discipline him would more clearly establish that they practiced an unconstitutional custom by condoning blatantly inexcusable conduct and failing to punish a repeat offender. See Gomez, 255 F3d at 1127. If Internal Affairs had reached a conclusion between those two extremes, then other factors might be relevant in determining whether defendants ratified Neu's conduct by failing to discipline him. And of course, a deficiency in the Internal Affairs investigation procedures might itself give rise to a Monell claim. See Black v Stephens, 662 F2d 181, 190-91 (3d Cir 1981) (holding that a police chief's failure to institute adequate investigation procedures for determining when to discipline police officers constituted an official policy encouraging the use of excessive force).

Jones v City of Chicago, 787 F2d 200, 207 (7th Cir 1986), cited approvingly by both the majority and dissent in Henry, 132 F3d at 519 n12, 525, is particularly relevant in assessing the importance of internal investigations. In Jones, two plaintiffs sued the City of Chicago and alleged that the same City gynecologist had sexually assaulted them during examinations in separate incidents nine months apart. After the first incident, the City had conducted an extensive internal investigation (two investigations by two different agencies, actually, to avoid a potential conflict of interest) and concluded that the allegations were without merit, and the City did not discipline the accused doctor. 787 F2d at 207. Several months later, the doctor allegedly assaulted the second plaintiff. When the patient filed a

17

**United States District Court**

For the Northern District of California

grievance with the City, the doctor resigned before the City could complete a renewed investigation.

Jones held that the City's investigation effectively precluded Monell liability because the investigations were extensive and because the investigations had cleared the doctor of wrongdoing. The investigations included interviews with the first plaintiff (Jones), interviews with the accused doctor, interviews with four nurses that were on duty at the time of the alleged assault, an analysis of the doctor's status with the state licensing board, an analysis of the Chicago Police Department's concurrent criminal investigation and a polygraph test (which the doctor passed). 787 F2d at 207. These investigations ended with a conclusion that Jones's accusation was "not sustained." Months later, after the second plaintiff complained of sexual misconduct during a gynecological exam by the same doctor, the City began another investigation, but the doctor resigned, leading the City to drop the investigation for want of jurisdiction. The court held that "[g]iven the extent of the investigation into the matter, the City's decision to clear [the doctor] of misconduct in connection with the Jones incident * * * cannot be faulted. Though in retrospect the City's decision may be second-guessed (particularly in light of [the second plaintiff's] complaint), it allows no inference that the City is to be blamed for [the doctor's] assault on [the second plaintiff]." 787 F2d at 207. Had Jones considered whether the City ratified or condoned the doctor's conduct by failing to discipline him – an argument not addressed in the district court (see Jones v City of Chicago, 608 F.Supp. 994 (N D

United States District Court

For the Northern District of California

Ill 1985) (Shadur, J)) nor on appeal – the investigation report exonerating the doctor would likely have been dispositive.

Jones's emphasis on internal investigations is directly relevant here.  If, as in Jones, the investigation of Neu was meaningful and if it concluded that the allegations against Neu were meritless, then defendants' argument that there is no evidence of a policy or custom condoning sexual assault of prisoners would be quite strong.  Although the record suggests vaguely that defendants conducted an internal investigation into Spears's and Wigfall's complaints, the record includes little to no evidence of the extent or the results of that investigation.  Without that evidence, the court cannot determine whether the failure to discipline Neu was the natural result of an investigation that cleared his name or whether it was the result of an unconstitutional ratification of Neu's conduct.

The court's focus on internal investigations admittedly entails difficulties in the context of sexual assault cases.  These difficulties are part of the broader problem of applying case law on harsh prison conditions or excessive force – where law enforcement officials exercising judgment or acting in the heat of the moment 'go too far' – to the sexual assault of inmates, which can never be justified or tolerated under any circumstances.  Internal investigations into complaints of sexual assault might never progress beyond the 'he-said, she-said' stage, and internal investigations might never establish that a culpable prison guard had committed wrongdoing.  By design, sexual assault occurs behind closed doors and away from potential witnesses.  In contrast, typical Monell claims – such as conditions of confinement claims or

United States District Court

For the Northern District of California

excessive force claims – usually describe conditions that are available for inspection or allege conduct that occurred in front of others.  Inadequate medical treatment claims, similarly, often generate a paper trail as prisoners file formal requests to see doctors, who then take notes during their examinations and then submit formal diagnoses and so forth.  But prisoners alleging sexual assault must establish the facts of their case by relying on little more than their own testimony.  In fact, because sexual assault is often committed covertly (as is alleged here), municipalities cannot expect that all instances of sexual assault will be reported and all wrongdoers punished, and accordingly municipalities might have a heightened duty to prevent or investigate sexual misconduct.  The dearth of evidence in sexual assault cases is particularly damaging because sexual assault victims must present circumstantial cases to begin with, arguing (say) that a municipality is indirectly responsible for an employee's conduct by failing to discipline the employee.  Internal investigations might not often unearth the true facts behind an allegation of sexual assault, and so an investigation report is not the beginning and end of the inquiry.

The court is mindful of overreliance on internal investigation reports, but the results of the Internal Affairs investigation in this case are essential in determining whether defendants maintained a custom of condoning sexual assault of inmates.  And yet the record is notably silent on this issue.

Plaintiffs are responsible for the lack of evidence surrounding the Internal Affairs investigation in this case. Defendants have met their burden of pointing to evidence suggesting

**United States District Court**
For the Northern District of California

that no genuine issue of material fact exists.  See <u>Celotex Corp v</u>
<u>Catrett</u>, 477 US 317, 322-23 (1986) ("Of course, a party seeking
summary judgment always bears the initial responsibility of
informing the district court of the basis for its motion, and
identifying those portions of 'the pleadings, depositions, answers
to interrogatories, and admissions on file, together with the
affidavits, if any,' which it believes demonstrate the absence of a
genuine issue of material fact.").  Defendants have no official
custom or policy of sexually molesting inmates, a point which
plaintiffs do not dispute in their memorandum.  Instead, plaintiffs
urge the court to infer a custom or policy on the theory that
defendants failed to reprimand Deputy Neu.  Plaintiffs must raise a
triable issue of fact to support their theory of liability.

Plaintiffs offer no evidence establishing that the
failure to discipline Neu was caused by a custom of condoning
sexual assault of inmates.  Plaintiffs have offered no evidence
that defendants had reason to believe Neu had actually committed
sexual assault.  Defendants could have reasonably refused to
reprimand Neu if Internal Affairs had found plaintiffs' accusations
unsupported.  Accordingly, there is no evidence to support
plaintiffs' theory that defendants condoned sexual assault and thus
no evidence that defendants caused or are otherwise responsible for
Neu's actions.  Even drawing all reasonable inferences in
plaintiffs' favor, the record is so skeletal that no reasonable
jury could conclude that the City and Sheriff Hennessey are liable.

Although the court suspects that the lack of evidence in
the record does not so much establish that plaintiffs' allegations
are false as that plaintiffs have not been well-represented, the

court agrees with defendants that plaintiffs' <u>Monell</u> claims are unsubstantiated.  Accordingly, defendants' motion for summary judgment is GRANTED.  Plaintiffs may not proceed on their first through fifth causes of action (see Doc #30) against the City or against Sheriff Hennessey.  This order does not affect plaintiffs' federal claims against Deputy Neu.

III

Deputy Neu claims that all of Spears's state law claims are barred by the statute of limitations.  The court agrees.

California law requires that plaintiffs suing a public entity must first seek relief in the City Controller's Office.  See Cal Govt Code § 945.4.  If that claim is denied, then within six months of that denial, the complainant must file his lawsuit.  Cal Gov't Code § 945.6(a)(1).  Failure to file within six months may result in summary judgment for the defendant.  See <u>Gonzales v County of Los Angeles</u>, 199 Cal App 3d 601 (1988).  The six-month statute of limitations applies to actions in federal court.  See <u>Estate of Darulis v Garate</u>, 401 F3d 1060 (9th Cir 2005).

Spears submitted his claim form to the San Francisco City Controller's Office on July 21, 2005.  Doc #54-4.  Spears listed his return address on "Broderick Ave" in San Francisco.  Doc #54-4 at 3.  On August 15, 2005, San Francisco denied his claim and mailed a denial letter to the address Spears provided.  Doc #45-5.  The letter complied with Cal Gov't Code § 913(b) and warned Spears that he had "only (6) six months" to file a lawsuit on his claim.  Doc #45-5.  Plaintiff did not file a lawsuit until almost fourteen

United States District Court

For the Northern District of California

months later when he was added as a plaintiff in Wigfall's lawsuit on November 7, 2006.  Doc #8.

In response, Spears admits that his lawsuit is untimely but argues that his delay should be excused: "Plaintiff Spears was incarcerated at the time his rejection was served and hence did not know what the deadline was.  Hence, his statute of limitations is tolled and/or should be waived as excusable neglect."  Doc #54 at 6.  Spears's argument does not find support in California law: "The statute of limitations for commencing a government tort claim action is not tolled by virtue of a plaintiff's imprisonment."  Moore v Twomey, 120 Cal App 4th 910, 914 & n2 (Cal Ct App 2004).  Spears has offered no explanation for the delay, although a possible one occurs to the court: there is no "Broderick Ave" in San Francisco; it's Broderick Street.  Could this have caused the City's denial of the claim and its express warning about the six-month limitation period to have gone awry in the mail?

That speculation aside, and plaintiff makes no such argument, fidelity to the statute of limitations would seem to serve little purpose here.  See Addison v State, 21 Cal 3d 313, 317 (1978) (tolling the six-month statute of limitations in section 945.6) ("It is fundamental that the primary purpose of statutes of limitation is to prevent the assertion of stale claims by plaintiffs who have failed to file their action until evidence is no longer fresh and witnesses are no longer available.")  If Spears's case moves forward, it is difficult to conceive that defendants will suffer from stale evidence or unavailable witnesses.  Spears filed his complaint on November 7, 2006, less than seventeen months after the alleged sexual assault.  Spears's

United States District Court

For the Northern District of California

claim would have been well-within the ordinary statute of limitations but for California's special exception for claims against public entities. Defendants would be hard-pressed to show that evidence in this case has gone stale after such a short time period. In fact, Wigfall's claims are not barred by the statute of limitations, and the alleged assault against her occurred only a few months after the alleged assault against Spears. Defendants will not be plagued by stale evidence in Spears's lawsuit any more than they will be in Wigfall's lawsuit. In this case, enforcing the statute of limitations against Spears may be only a pointless procedural hurdle, not a method of protecting defendants from an unfair trial.

Nonetheless, statutes of limitations in suits against public entities in California present special considerations. See Addison, 21 Cal 3d at 320 ("[I]n light of the need for orderly fiscal planning, the prompt resolution of claims is an essential aspect of the Tort Claims Act."); Chase v State, 67 Cal App 3d 808, 812 (Cal Ct App 1977). Moreover, Spears must shoulder some of the responsibility for his delay. He did not bring his claim until eight months after the deadline had passed. Compare Gonzales v County of Los Angeles, 199 Cal App 3d 601, 606 (Cal Ct App 1988) (reversing summary judgment granted against a plaintiff who filed two days late). Spears did not appear to take any "good-faith" actions to prosecute his claim. See Addison, 21 Cal 3d at 319. Even if he believed that pursuing his claim would have been futile at best (after being denied at City Hall) or would backfire at worst (because he feared retaliation from prison guards), Spears cannot circumvent the statute of limitations by doing nothing.

United States District Court
For the Northern District of California

1    Accordingly, the court declines to toll the statute of

2  limitations.  Spears's state law claims are dismissed with

3  prejudice.

4

5                                  IV

6    Defendants move for summary judgment on Wigfall's Unruh

7  Act claim.  The Unruh Act, Cal Civ Code § 51.7, states:

8
         All persons within the jurisdiction of this state have
9        the right to be free from any violence, or intimidation
         by threat of violence, committed against their persons or
10       property because of political affiliation, or on account
         of [sex, race, color or sexual orientation], or because
11       another person perceives them to have one or more of
         those characteristics.
12

13   Wigfall is "readily identifiable as African-American[]."

14  Doc #54 at 5.  Wigfall argues that Neu committed the assault on

15  account of race or color because "Neu persistently asked [her]

16  questions that implied he was preoccupied with sexually conquering

17  African-Americans."  Doc #54 at 5.  Specifically, according to

18  Wigfall, in one incident:

19
         [Neu] sit down [next to me].  He like, you know, you're
20       really pretty.  You know, he saying that type of stuff to
         me.  You know, you're really pretty.  Then he states to
21       me that he never been with a black woman before and never
         kissed a black woman before.  And just all – a lot of
22       unprofessional stuff he was stating to me as far as do I
         want to be the first black woman that he kiss.
23

24  Doc #54-2 at 12-13.  That statement, if credible, suggests that Neu

25  targeted African-Americans in particular to be the victims of his

26  sexual assault.  Relatedly, it suggests that Neu targeted Wigfall

27  "on account of" her race or color.  Defendants do not address this

28  evidence.

**United States District Court**
For the Northern District of California

1    Accordingly, a reasonable juror might conclude that Neu

2    assaulted Wigfall because she is black.  Defendant's motion for

3    summary judgment on Wigfall's Unruh Act claim (eighth cause of

4    action) is DENIED.

5

6                                    V

7    Defendants move for summary judgment on Wigfall's Bane

8    Act claim (seventh cause of action).  Cal Civ Code § 52.1.  The

9    Bane Act creates a private cause of action against anyone who

10

11        interferes by threats, intimidation, or coercion, or
          attempts to interfere by threats, intimidation, or
12        coercion, with the exercise or enjoyment by any individual
          or individuals of rights secured by the Constitution or
13        laws of the United States, or of the rights secured by the
          Constitution or laws of this state * * *.

14

15   Cal Civ Code §§ 52.1(a), (b).  The statute has two requirements.

16   First, plaintiffs must show an attempted or completed act of

17   interference with a legally protected interest; second, plaintiffs

18   must show that the defendant used threats, intimidation or coercion

19   to effect that interference.  See <u>Jones v Kmart Corp</u>, 17 Cal 4th

20   329, 334 (1998).

21   Defendants argue that a claim of sexual assault is

22   insufficient under the Bane Act because merely using force to

23   deprive an inmate of her legal rights is not the same as using

24   threats, intimidation or coercion to violate the victim's rights.

25   Defendants' argument makes sense as a matter of analytic logic and

26   in some circumstances might be dispositive.  Compare, for instance,

27   an armed robber and a pickpocket.  An armed robber uses the threat

28   of homicide to take the victim's property.  A successful pickpocket

United States District Court

For the Northern District of California

uses force covertly, however, and does not necessarily rely on threats, intimidation or coercion.  Defendants' argument makes sense in the abstract, but they make no effort to tie their argument to the facts of this case.

Deputy Neu is not a pickpocket.  He is a corrections officer in a California jail.  He exerts control over nearly every aspect of inmates' lives.

Wigfall claims that Neu interfered with her right to be free of sexual assault.  The right to be free from sexual assault is guaranteed by California law.  Wigfall claims that Neu succeeded in molesting her because of both explicit threats and the intimidation and coercion that are implicit in all officer-inmate interactions.  Wigfall may have reasonably believed that if she tried to refuse or repel the sexual assault, Neu would use his position of authority to punish her.  Wigfall's claim is so basic that defendants' argument borders on the frivolous.

Even disregarding defendants' bizarre interpretation of the statute, Wigfall in her deposition provided unequivocal evidence of threats:

Q:   And [Deputy Neu] didn't threaten you with physical
      violence, did he?

A:   He threatened me.  Yeah, he threatened me.  He told me he
      was going to drag me in the shower room and kick my
      fucking ass when I was acting funny with him, like I
      wasn't giving him enough attention.  He was like, man,
      what's wrong with you?  Like, you're a trip.  Like, I can

United States District Court

For the Northern District of California

imagine how you is on the streets.  I'll drag you in the
shower.  I'm going to kick your fucking ass.

Doc #54-2 at 14-15.

Wigfall also stated that she was intimidated by Deputy
Neu's position and that Neu used his authority to commit the
alleged sexual assault: "What he was doing to me is taking
advantage of me.  He was violating me.  He was using his authority.
He was violating me, period.* * *  It was against - it wasn't
against - it was against my will, and he used his authority to
press the issue."  Doc #54-2 at 14.

Plaintiffs have offered evidence that Deputy Neu
interfered with Wigfall's right to be free from sexual assault.
Wigfall has also offered ample evidence that Deputy Neu used
explicit or implicit threats, intimidation or coercion to commit
sexual assault.  Defendants' motion for summary judgment on
Wigfall's Bane Act claim is DENIED.

VII

Because defendants have offered no evidence that Spears
or Wigfall failed to exhaust available prison remedies, defendants'
motions to dismiss are DENIED without prejudice.  Doc ##40, 42.

Plaintiffs have not demonstrated a genuine issue of
material fact regarding causation under Monell, and therefore the
motion for summary judgment on the section 1983 claims is GRANTED
as to the City and Sheriff Hennessey.  Doc #44.

Defendants' motion for partial summary judgment on
Spears's state-law claims as time-barred is GRANTED.  Doc #44.

**United States District Court**
For the Northern District of California

1    Wigfall has raised a genuine issue of material fact

2 whether Deputy Neu sexually assaulted her on account of her race or

3 color, and Neu's motion for partial summary judgment on the Unruh

4 Act claim is DENIED.  Doc #44.

5    Wigfall has also raised a genuine issue of material fact

6 whether Deputy Neu used threats, intimidation or coercion to

7 assault her, and Neu's motion for partial summary judgment on the

8 Bane Act claim is DENIED.  Doc #44.

9

10    IT IS SO ORDERED.

11

12    _____

13    VAUGHN R WALKER
      United States District Chief Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28